Defendant-appellant, Charles A. Dumas, appeals his conviction in the Franklin County Court of Common Pleas following a jury trial in which he was found guilty of rape and rape by force, in violation of R.C. 2907.02(A)(1)(b) and (A)(2), an aggravated felony of the first degree.
During the time period in question, appellant lived with his girlfriend, Michelle Dillon, and her two daughters, four-year-old Tene and three-month-old Dessa, at 6865 Greenleaf Drive, Apt. E-2 in Reynoldsburg, Ohio. Appellant had been living with the Dillons for approximately three months and routinely watched the children while Michelle was at work. On October 29, 1997, Michelle left for work between 9:35 and 9:45 a.m. Michelle's place of work was approximately a seven minute walk from the apartment. As Michelle was leaving the apartment for work, she noticed that the construction workers who were renovating the apartment complex were re-shingling the apartment buildings and throwing the old shingles to the ground. Because of the ongoing construction work, Michelle told appellant, who was watching the girls that day, not to let Tene play outside.
Michelle testified that she called home at lunch to check on her younger daughter Dessa, who suffered from a rare skin disease requiring regular administration of medications, and also to check on Tene who was coming down with a cold. Michelle returned home shortly after 6:00 that evening. Michelle testified that appellant was sitting on the edge of the couch and that Tene was lying on the far side of the couch on her side. Michelle testified that, when she entered the apartment, appellant left almost immediately thereafter, and that she then touched Tene on the head and went upstairs to check on Dessa. Michelle then went back downstairs and sat down next to Tene. At that time, appellant telephoned Michelle from Kristy Hercenberg's apartment in the same complex to tell Michelle that he had given Tene some cold medication. After the telephone call, Michelle again sat down next to Tene. Michelle testified that Tene was whimpering or sobbing. Michelle asked Tene if her head or stomach was hurting, to which Tene answered no. Michelle asked what was hurting and Tene responded that her "coochie hurts." Michelle testified that coochie is Tene's term for vagina. Michelle then asked why her coochie hurt and Tene said that "Charles told me not to tell you." (Tr. 180.) Michelle testified that she could tell that Tene was scared by her facial expressions.
Michelle told Tene that "mommy and Tene don't keep secrets from each other and she needs to tell me anything." Tene then told Michelle that appellant had "put his coochie in her coochie." (Tr. 180.) Michelle took Tene to the bedroom and, upon removing Tene's panties, saw that Tene had a bloody panty liner in her underwear. When Michelle removed the panties, blood ran out and down Tene's legs. Michelle called her brother and then the Reynoldsburg police. The police arrived within twenty minutes. Appellant returned to the apartment five minutes before the police arrived, but Michelle was afraid to ask him about Tene until she saw the police arrive. Upon the arrival of the police, but before they entered the apartment, Michelle asked appellant why he "did that to Tene." Appellant replied, "Do what?" Michelle responded, "Why did you hurt her?" To which appellant responded, "I didn't molest that girl." (Tr. 184.)
Upon the arrival of the police, appellant voluntarily went to the police station and made a statement. During the course of the investigation, appellant offered written and oral statements to law enforcement officers. In a written statement made on October 29, 1997, appellant indicated that, on the day in question, he sent Tene out to play and she returned to the house about one or two hours later, crying. Appellant stated that Tene complained to him that "her butt was hurting and somebody was sticking her and her butt was hurting and her head." (Tr. 347.) Appellant further indicated that he gave her medicine and told her to lie down on the couch. Appellant explained that later he saw a red stain on Tene's shorts, took her into the bathroom, noticed blood in her underwear and gave her a bath, which stopped the bleeding. Appellant then put a panty liner in her underwear. Appellant agreed with Michelle that he left the apartment shortly after she arrived home.
The police searched the apartment for evidence and Tene was subsequently taken to Children's Hospital. At the hospital, Michelle and Tene met briefly with a triage nurse. At this time, Lynn Finefrock, a clinical social worker employed with the hospital, met with Michelle and Tene to assess the situation. Finefrock testified that, when a child is brought into the hospital with possible sexual abuse injuries, the child is first seen by a triage nurse who obtains a brief description of the problem. If sexual abuse is indicated, then Finefrock is the next person the family meets. Finefrock's role in the Emergency Department at Children's Hospital is to obtain background information from the incoming patient and the patient's family.
Finefrock testified that, upon meeting Michelle and Tene, she asked Tene why she was at the hospital. Tene replied that, "Charles had put his coochie in her coochie. He had moved up and down. He had made her wet. And the wetness was blood." (Tr. 386.) Finefrock realized that Tene was in need of immediate medical attention and took her to an examination room. Finefrock put Tene's information on an abuse form and advised the nurse and the physician of Tene's need for medical attention. Tene's injuries were extensive, requiring surgery.
Appellant was subsequently arrested and charged with rape. The jury found appellant guilty of rape by force and he was sentenced to a mandatory term of life imprisonment. On appeal, appellant asserts seven assignments of error:
"ASSIGNMENT OF ERROR NO. 1:
 "THE TRIAL COURT ERRED AND THEREBY DEPRIVED APPELLANT OF DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION BY OVERRULING APPELLANTS CRIM.R. 29 MOTION FOR JUDGMENT OF ACQUITTAL, AS THE STATE FAILED TO OFFER SUFFICIENT EVIDENCE TO PROVE EACH AND EVERY ELEMENT OF RAPE BEYOND A REASONABLE DOUBT.
"ASSIGNMENT OF ERROR NO. 2:
 "THE TRIAL COURT ERRED AND THEREBY DEPRIVED APPELLANT OF DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION BY FINDING DEFENDANT GUILTY, AS THE VERDICTS FOR THE CHARGE OF RAPE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
"ASSIGNMENT OF ERROR NO. 3:
 "THE TRIAL COURT DEPRIVED APPELLANT OF HIS RIGHT TO CONFRONT HIS ACCUSERS AND DUE PROCESS OF LAW AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION BY PERMITTING IMPROPER HEARSAY STATEMENTS TO BE ADMITTED AT TRIAL IN VIOLATION OF THE RULES OF EVIDENCE.
"ASSIGNMENT OF ERROR NO. 4:
 "THE TRIAL COURT DEPRIVED APPELLANT OF DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION BY PERMITTING THE JURY TO VIEW CUMULATIVE AND HIGHLY PREJUDICIAL EVIDENCE IN VIOLATION OF THE RULES OF EVIDENCE.
"ASSIGNMENT OF ERROR NO. 5:
 "THE TRIAL COURT COMMITTED PLAIN ERROR BY ADMITTING HIGHLY PREJUDICIAL AND INADMISSIBLE HEARSAY STATEMENTS MADE BY THE ALLEGED VICTIM AND THEREBY DEPRIVED APPELLANT OF HIS RIGHTS AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.
"ASSIGNMENT OF ERROR NO. 6:
 "TRIAL COUNSEL'S FAILURE TO OBJECT TO CLEARLY INADMISSIBLE HEARSAY THAT VIOLATED APPELLANT'S RIGHT TO CONFRONTATION CONSTITUTED INEFFECTIVE ASSISTANCE OF COUNSEL, AND THEREBY DEPRIVED APPELLANT OF HIS RIGHTS AS GUARANTEED BY THE SIXTH
AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.
"ASSIGNMENT OF ERROR NO. 7:
 "THE TRIAL COURT ERRED AND THEREBY DEPRIVED APPELLANT OF DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION BY ALLOWING THE PROSECUTING ATTORNEY TO PRESENT EVIDENCE OF APPELLANT'S REFUSAL TO SUBMIT TO A TRUTH VERIFICATION TEST."
Appellant's first and second assignments of error will be considered together. In his first assignment of error, appellant alleges that the evidence presented at trial was insufficient to establish venue beyond a reasonable doubt. In his second assignment of error, appellant argues that the finding of venue was against the manifest weight of the evidence. Because the state has the burden to prove venue and, appellant argues, it failed to provide express evidence of such, appellant contends the trial court's decision should be overturned. Appellant argues that there was no evidence that the rape occurred in the apartment or that the apartment was located in Franklin County.
We agree with appellant that at no point did the state specifically establish that the crime with which appellant was charged had, in fact, occurred in Franklin County. While venue is not an essential element of a charged offense, as such, venue must be proven by the state beyond a reasonable doubt unless it is waived by the defendant. State v. Headley (1983),6 Ohio St.3d 475, 477. A defendant waives the right to challenge venue when the issue is raised for the first time in the court of appeals. State v. Loucks (1971), 28 Ohio App.2d 77,78.
Trial counsel made a Crim.R. 29 motion for acquittal at the close of the state's case, arguing the state had failed to prove all the elements of rape. As a result, two charges alleging anal intercourse were dismissed. Trial counsel also argued:
 "* * * As we all know, it's not rape unless there is penetration by the male member into the young female's vagina. And the only evidence the court has or the jury has before it that that happened is what the mother says that Tene said and then that Tene may have repeated later." (Tr. 429.)
Appellant argues that this motion was sufficient to challenge venue. We disagree. A review of the record finds no reference to an objection being made by appellant as to venue. Neither at the close of the state's case nor at the conclusion of the trial was any objection to venue raised by trial counsel. Having not raised and preserved this issue, it must be considered waived for appellate purposes.
Assuming arguendo that the question of venue was properly before this court, we would still be compelled to reject appellant's argument. The standard of proof is beyond a reasonable doubt, although venue need not be proved in express terms as long as it is established by all the facts and circumstances in the case. State v. Dickerson (1907), 77 Ohio St. 34, paragraph one of the syllabus. Additionally, the trial court has broad discretion to determine the facts which would establish venue. Toledo v. Taberner (1989), 61 Ohio App.3d 791. The evidence established that the rape occurred at 6865 Greenleaf Drive, Apt. E-2 in Reynoldsburg, Ohio. Michelle testified that she left appellant at the apartment with the two girls while she was at work. A construction worker at the apartment complex testified that he saw Tene lying on the couch during that afternoon, and Kristy Hercenberg testified that appellant did not own his own car and that he depended on her for transportation. Various people employed by the apartment complex testified they did not see Tene playing outside.
Furthermore, evidence was introduced from which the court could find that the crime occurred in Franklin County, Ohio. Two police officers testified that the apartment was located in Reynoldsburg, Ohio. The state introduced a brochure for the apartment complex which listed the address of the complex as Reynoldsburg, Ohio. A county map would show the location to be in Franklin County. In addition, a lab report entered into evidence which was filled out by a detective indicated that the location of the offense was "Reynoldsburg, Franklin." There simply was no evidence to suggest that the apartment was located outside of Franklin County or that the rape had occurred outside of Franklin County. Accordingly, there were sufficient facts and circumstances introduced from which the trial court could conclude that the crime occurred in Franklin County and that venue was proper in Franklin County, had appellant raised the issue timely. Appellants first and second assignments of error are overruled.
In his third assignment of error, appellant argues that the trial court erred by allowing hearsay statements made to third parties by the child victim. Appellant argues that the statements made by Tene to her mother and to the social worker at the hospital should not have been admitted because they were hearsay statements that did not fall within any exception. We disagree.
A trial court has broad discretion in determining whether an out-of-court statement fits within the hearsay exception.State v. Dever (1992), 64 Ohio St.3d 401, 410, certiorari denied, Dever v. Ohio (1993), 507 U.S. 919. An abuse of discretion will be found only if the trial court's attitude was unreasonable, arbitrary or unconscionable. State v. Adams
(1980), 62 Ohio St.2d 151, 157. Appellant first argues that the statements made by Tene to her mother at the apartment were inadmissible hearsay. The trial court found that Tene's statement to her mother was admissible as an excited utterance. Appellant argues that such testimony was inadmissible because it was not an exited utterance, as the statement was not made while Tene was excited, startled or frightened.
Evid.R. 803(2) defines an excited utterance as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." The admissibility of such statements does not depend upon the availability of the declarant as a witness. Evid.R. 803. In State v. Wallace
(1988), 37 Ohio St.3d 87, 88, the court stated:
 "The circumstances surrounding an excited utterance — a startling event, a statement relating to that event, a declarant under the stress of the event — do not allow the declarant a meaningful opportunity to reflect on statements regarding the event. Without opportunity to reflect, the chance that a statement is fabricated, or distorted due to a poor memory, is greatly reduced. This is the rationale for allowing an excited utterance into evidence."
Furthermore, the court has recognized that statements made in response to questions may still be under the stress of the event. Id., paragraph two of the syllabus. The question in this case is whether the statements made by Tene to her mother were made while Tene was still under the stress of the sexual assault to the extent that she had no opportunity for reflection or fabrication.
Tene's statement to her mother that appellant put his "coochie in her coochie" was made within a short time period of appellant leaving the apartment, Tene's first opportunity to talk to her mother in appellant's absence. Tene was whimpering and looked scared. Although Michelle asked Tene what was hurting, this question was not coercive or leading, rather, it facilitated Tene's natural focus of thoughts and did not destroy the domination of the nervous excitement over her reflective faculties. Id. at 93. Accordingly, it was reasonable for the trial court to find that the excitement of the assault was still dominant over Tene's thought processes and that Tene's statements were the unreflected expressions of her belief. Id.
Appellant further argues that the trial court erred in allowing the social worker, Lynn Finefrock, to testify as to the statement made to her by Tene in the hospital. The trial court concluded that these statements were admissible under Evid. R. 803(4). Under Evid.R. 803(4), a hearsay statement is admissible if it is "made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."
Appellant argues that, because Finefrock is a social worker and not a medical worker, statements made to her do not qualify under this exception. We agree with this statement, as it applies to statements made to social workers not relating to medical treatment. See State v. Boston (1989), 46 Ohio St.3d 108; State v. Chappell (1994), 97 Ohio App.3d 515. However, in "child abuse cases many courts have admitted testimony from nonmedical personnel under Evid.R. 803(4) as long as those statements were made in the course of treatment, be it physical or psychological, regardless of the child's motivation." Statev. Older (Oct. 21, 1994), Lucas App. No. L 93-233, unreported, following State v. Garrett (July 16, 1990), Clermont App. No. 89-08-070, unreported.
Finefrock testified that she worked with the medical staff in a team approach and that it was a very important aspect of her role to get information for the medical staff. Consistent with this testimony, the trial court found that Finefrock was an integral part of the medical staff whose role was not only to obtain information in a social worker role, but also to obtain information for medical purposes. Based on the role Finefrock occupied in dealing with Tene, we conclude that the trial court did not err in admitting the hearsay testimony of Finefrock as a social worker and non-medical professional. Based on the record in this case, we determine that the trial court was correct and reasonable in admitting the disputed evidence. Appellant's third assignment of error is overruled.
In his fourth assignment of error, appellant argues that the trial court erred in admitting graphic photographs that showed Tene's injuries. Appellant also argues about the admission of his written statement referring to Tene's vagina as "pussy" and the admission of his oral statement that he can get "pussy every day." The trial court permitted the prosecutor to show the jury two photographic slides of Tene's injuries.[1] One slide was a general overview of the area, while the other was a close-up view of the damage done to Tene's vagina.
Under Evid.R. 403 and 611 (A), the admission of photographs is left to the sound discretion of the trial court. State v.Maurer (1984), 15 Ohio St.3d 239, 265. "The trial court has broad discretion in the admission and exclusion of evidence and unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby, this court should be slow to interfere." State v. Hymore (1967), 9 Ohio St.2d 122,128, certiorari denied, Hymore v. Ohio (1968), 390 U.S. 1024. The state had the burden to prove that appellant engaged in sexual conduct with Tene. The photographs of Tene's vaginal area were illustrative of the injuries sustained by Tene. The photographs had probative value in demonstrating that Tene had endured intercourse. The photographs also served to rebut appellant's statements to the police that tended to suggest Tene's injuries were not substantial and were taken care of by him. The photographs were also suggestive of appellant's guilt as anyone finding a child with such injuries would have, at a minimum, informed the child's mother at the first opportunity and most likely have sought medical help for the child. The trial court admitted only two photographs and neither of these photographs were cumulative or repetitive. Because the photographs were probative and relevant to the issues, the admission of these photographs was not unfairly prejudicial.
Appellant further argues that the trial court erred in admitting certain statements made by appellant to the police during the course of the investigation. On October 29, 1997, appellant was taken to the Reynoldsburg Police Department where he made a written statement. On the same day, an interview of appellant by Detective Scott McKinley was tape recorded. A second tape recording of an interview of appellant by Detective McKinley was made on the day appellant was arrested. Trial counsel did not object to the statements generally, but specifically objected to the following language contained in appellant's written statement which Detective McKinley read to the jury:
 "Then ran the bath water. Then I put her in the tub. Then I realized that the blood was stopping. Then ask her to let me see her butt and there didn't look like the blood was coming from there. So I had her lay on the back and looked at her pussy. And that where I seen the blood at.
 "So then I took the rag and wash her pussy so I could see what up and that were I seen most of the blood at. * * *" (Tr. 348.)
Trial counsel also specifically objected to language used by appellant in a recorded oral statement which was played for the jury. Specifically, counsel objected to references appellant made to "getting pussy every day," to contacting an attorney regarding a truth verification test,[2] to "looking at her pussy for blood" and to being "high" and "fucked up." (Tr. 350.)
Appellant argues that this language has no probative value, while the danger of prejudice was substantial. The trial court overruled the objection, noting that appellant had used the term "pussy" in other statements when he claimed that he "gets a lot of pussy." The trial court found that "if he's referring to [Tene's vagina] as pussy, one pussy isn't differentiated as another pussy and that might have other relevance other than just bad choice of words. So I'm going to permit that to stay in the statement, not be redacted." (Tr. 346.)
As stated, the standard of review under Evid.R. 403 is an abuse of discretion. This court will not reverse the decision of the trial court unless a clear abuse of discretion is shown and appellant suffered material prejudice. Hymore. Upon review of the above-referenced statements, this court finds that the trial court did not abuse its discretion in allowing the statements. Appellant used the word "pussy" as slang for Tene's vagina in describing her injuries. Therefore, admission of the language was helpful to the jury in understanding appellant's version of the events. Furthermore, as the trial court found, the jury could make the inference that, for appellant, the word "pussy" had sexual intercourse overtones and appellant's use of the word in regard to Tene may have reflected that appellant did not differentiate between adults and children when considering sexual intercourse.
Moreover, appellant has failed to show that he was materially prejudiced by the admission of the statements in question, as the evidence introduced, even if the statements had not been admitted, was sufficient to find appellant guilty. Appellant's arguments regarding introduction of a statement, which included reference to a truth verification test, will be addressed in his seventh assignment of error. Appellant's fourth assignment of error is overruled.
In his fifth assignment of error, appellant contends that plain error occurred when the trial court admitted into evidence, without objection, a doctor's testimony which was given based on information provided by other doctors. At trial, Dr. Dennis King, the surgeon who operated on Tene at the hospital, testified that "Doctor Nuss and Doctor Reeder told me that the child had indicated that she had been attacked by her mom's boyfriend and that he had put his coochie into her coochie. The indication was that a penis had been utilized." (Tr. 223.)
No objection was made to this testimony; however, when the prosecuting attorney attempted to elicit similar information on redirect examination, trial counsel interrupted and requested to approach the bench. In a subsequent bench conference, trial counsel objected to the hearsay statements, requested the court to strike the testimony and moved for a mistrial. The trial court denied the requests, finding that trial counsel had waived the error by not making a contemporaneous objection. Appellant argues that the trial court committed plain error by refusing to strike the testimony because the statement was inadmissible hearsay. We disagree.
Pursuant to Crim.R. 52(B), an appellate court may notice "[p]lain errors or defects affecting substantial rights * * * although they were not brought to the attention of the court." Appellant argues that the admission of Dr. King's testimony, which included the statement made by Tene, was inadmissible hearsay. Evid.R. 803(4) does not require that a statement made for medical purposes be made by the patient. Evid.R. 803(4) is an exception to the hearsay rule which provides that: "Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."
Dr. King's testimony, based on information provided by Drs. Nuss and Reeder, establishes that Dr. King was informed of Tene's statement for purposes of medical diagnosis. Dr. King testified that he spoke with the attending physicians, Drs. Nuss and Reeder, so that he could "define how the injury occurred because that was important." The reason it was important for medical diagnosis was because if the injury was caused by a straddle injury, he would look for certain injuries, while if the injury was caused by an attack, "you need to know what the nature of the attacking instrument was." Dr. King explained that "[i]f it's a blunt instrument, like a bowling pin or a penis, then you're probably not going to penetrate up into the perineal cavity and have internal injuries." Dr. King further stated:
 "A. Correct. It really gave me the information that stated that I probably didn't need to worry about an internal injury up inside to her kidneys, liver, spleen, bowel; that this should be external since it's a blunt instrument." (Tr. 223.)
Accordingly, because Drs. Nuss and Reeder conveyed Tene's statement to Dr. King for purposes of medical diagnosis, the hearsay statement was admissible pursuant Evid.R. 803(4), which sets forth an exception to admission of hearsay when the statement is made for purposes of diagnosis or treatment. Appellant's fifth assignment of error is overruled.
In his sixth assignment of error, appellant contends that his trial counsel was ineffective in failing to object to the statements of Dr. King. To show ineffective assistance of counsel, it must be shown that counsel's performance was deficient and that defendant was prejudiced by the deficient performance. Strickland v. Washington (1984), 466 U.S. 668. Pursuant to our determination of appellant's fifth assignment of error, that the statement made by Dr. King was properly admitted, trial counsel was not ineffective in failing to object to the statements. Accordingly, appellant's sixth assignment of error is overruled.
In his seventh assignment of error, appellant argues that the trial court erred in allowing the state to present evidence of appellant's refusal to take a truth verification test. During the testimony of Detective Scott McKinley, a handwritten statement by appellant was read into evidence. Detective McKinley testified that he had also conducted an interview with appellant on October 29, 1997, which was tape recorded, marked as State Exhibit A-13. When the prosecutor proposed to play the tape of the October 29th interview, defense counsel objected on several grounds, including the fact that the tape contained reference to appellant's refusal to take a truth verification test; however, at that time, the prosecutor indicated that defense counsel was referring to a second taped interview. Although the record is somewhat unclear, it does not appear this tape was played to the jury.
Upon review of the evidence and the transcript, this court has found no reference admitted at trial regarding appellant's refusal to take a truth verification test.
Detective McKinley testified regarding certain portions of the second tape, but his testimony did not reach to the issue of the truth verification test, nor was the second tape admitted into evidence. "[I]n determining whether the defendants had a fair trial we cannot be concerned with something which happened of which the jury had no knowledge but are only concerned with what was imparted to the jury." State v. Collins
(1977), 60 Ohio App.2d 116, 122. Accordingly, because there was no reference during the trial of this matter as to appellant's alleged refusal to take a truth verification test, this court finds no merit to appellant's seventh assignment of error. Appellant's seventh assignment of error is overruled.
For the foregoing reasons, appellant's seven assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
LAZARUS, P.J., and BRYANT, J., concur.
[1] Photographic duplication of the slides were given to the jury. No slide projector was available in the jury room.
[2] See discussion in appellant's seventh assignment of error.